First matter is U.S. v. Harris. Good morning. Joe Yablonski on behalf of Mr. Harris, Fightman Reserve. I didn't hear you then. Joe Yablonski on behalf of Mr. Harris. You mumbled it. That's okay. I apologize. Good morning. He was intimidated by the crier's opening, I think. If I could have two minutes for a rebuttal, Judge. You think you really... Do you want me to take more? No. I never think anybody can get anything useful in two minutes. But when they say one minute, I throw it away. I may not use it, Judge. It's okay. Use it to your benefit. This case is fairly straightforward in my opinion. As you know, Mr. Harris was sentenced to a statutory maximum sentence of 120 months for his conviction on a NOLO plea to unlawful possession of a firearm. I presented three procedural errors for your consideration. The application of any one of which I submit would have resulted in a recommended sentencing guideline range of something, the lower end of the range, less than the statutory maximum of 120 months. Let's focus in on the NOLO issue. If you were to win the NOLO issue, that gets you down to, what, 110? 110 to 120, 120 being the statutory max. So you still may end up... Well, there is a difference between 110 and 120. There's a difference. There's certainly a difference. And in this case... In this case, the district court, in my opinion, did not specifically state that irrespective of any of these issues that I've raised, if she were to have granted his acceptance or would have found that the firearm was stolen, that irrespective of any of those, a sentence of 120 months would still be an appropriate sentence. What all the district court said was that a guidelines sentence, in this case, was an appropriate sentence. Well, the guideline was 120 months because, based upon her findings, the sentencing range was 135 to 168. So if any of these errors, or if you find any of these to be errors, I submit that the court should follow its practice, its ordinary practice, and remand because of those errors. The facts are relatively simple, and I don't think there's tremendous dispute about them, so I'm not going to belabor them, and I'll start with the first issue that I've raised in my brief, which is the acceptance of responsibility argument. The district court found that Harris failed to show, by preponderance of the evidence, that he had accepted responsibility. Why should we remand for resentencing? Well, there was a lengthy hearing on this NOLO plea. We were there, as I recall, for better than two hours. My client testified at length during that proceeding. In accepting the plea, which the court acknowledged was a rare situation in federal district court, she explicitly credited his testimony. She found it to be believable. Not in a particular respect. She gave a blanket endorsement to the credibility of his testimony. He said he didn't remember, right? He said he didn't remember. He said he ingested alcohol. He said he ingested drugs. Said he didn't remember. But she found all of that testimony to be credible. Why should we benefit somebody who ingested alcohol? Who got so drunk that he couldn't remember? Well, he's not benefited because he's guilty, and that's what the NOLO plea is all about, Judge. He didn't admit. He acknowledged that it was him on the video. He acknowledged that he engaged in the conduct. Well, I mean, it's pretty hard not to acknowledge if you see a video of yourself. Pretty hard not to say. He hadn't even seen the video yet, Your Honor, prior to telling me that he wanted to plead guilty. He knew it. He had a police report, said he was in possession of a gun. He said, I don't remember. That's me. A gun who killed somebody else. Well, yes, and that's – I'll get to that. But that's all he could do was be truthful about what he remembered and put it in the hands of the district court. That's what he did. What's to deter people, defendants, from saying, I don't remember, and therefore I accept responsibility? Well, again – Don't we, as a society, don't we have to say something about that? Well, he did accept responsibility. He said it in those words at his sentencing hearing. But I think the thing about the district court here, after explicitly crediting that testimony, the district court gave two reasons, essentially, for not giving him acceptance of responsibility credit. Number one, he did not – the defendant did not even plead guilty. He couldn't. So that's an invalid reason, in my opinion. But Bennett was a case where he also had a NOLO plea. We had a NOLO plea in Bennett. Big difference between Bennett and this case. Bennett, massive Ponzi pyramid scheme, complex criminal conduct. The defendant in that case, as I recall, issued a press release after the NOLO plea, disavowing any responsibility for the facts as alleged by the government in that case. The plea was part of the scam in Bennett. It was continuing part of the scam, basically. Well, yes, actually. Big difference between the reason for the NOLO plea in that case and this case. Civil liability in that case, none in this case. But still, it was a NOLO plea. Still was a NOLO plea. I mean, there is a legal distinction between – you wouldn't have asked for it if there isn't. There is still a legal distinction between a NOLO and a plea of guilty. And a NOLO and an Alford plea. Right. My client didn't come and request acceptance of an Alford plea in this case where he said, hey, I don't admit anything, just so. But that was one point. I want to forego it. That was one of the reasons why the district court did not find that he had clearly accepted responsibility. But she credited all of his statements, everything he said that he remembered. In accepting the plea. In accepting the plea. But one of the reasons, Judge, that she gave in not giving him credit was saying, well, he didn't even plead guilty. He couldn't. She couldn't have accepted that guilty plea. There would not have been a basis for it. Absent perjury, she couldn't have accepted it. Exactly. So, unless he wanted to plead Alford, he didn't want to. We didn't request that. The other reason she gave was that his repeated statements that he can't remember is making excuses, not accepting responsibility. Again, those were the statements that she credited as believable when she accepted the plea. So those are the two reasons she gave in not giving him credit for acceptance of responsibility. And I would submit that this case is very distinguishable from Bennett, from all of the other cases that involved complex, long-standing, ongoing criminal conduct, repeated acts, defendants who went to trial in some of those cases, defendants who obstructed justice in some of those cases, defendants who gave false statements to the court in some of those cases. What about the district court's specific finding that he never showed remorse? Well, that's probably the big problem with this case, and that's why I said short of getting down on a knee and begging for forgiveness, he did everything he could. Does a defendant have to utter certain buzzwords? Is the court going to say these are the words that a defendant needs to utter in order to qualify? Whether he has to utter buzzwords or not, you'll agree he has the burden. I'll agree he has the burden, absolutely. Is that the same issue here? It's an interesting question because is the court's finding a fact that he didn't accept remorse, is that conflated with the fact that he did not plead guilty, he pled no, or is there a distinction there? Is she saying, well, yeah, I believe you, you can't remember. In addition to that, I'm not getting any remorse vibe from it. I don't know that she actually said that specifically as a reason for not accepting or not giving him the credit. I think the reasons she set forth were that he did not even plead guilty and that he's making excuses for his conduct. Those are the reasons. Wasn't he making excuses for his conduct? Not according to her. She believed him. She found him to be completely credible and the testimony of Officer Raymond Perry who testified. Wouldn't it be incredible the fact that you accept his words doesn't mean that you're accepting responsibility. I don't know what else he could have done in that circumstance short of, as I said, getting on his case. Plead guilty. He did. Well, he couldn't plead. He couldn't plead guilty. But he couldn't judge. Well. That's the point. Couldn't plead guilty. Wouldn't every defendant say, I don't remember? But that's either believable or not in the eyes of the district court. And she believed him. And, again, he didn't tender an Alford plea. He didn't say, just sentence me. I just want to be sentenced. I don't want to fight this. He truthfully said, I can't remember what happened. One other, what I contend is a significant issue where the district court clearly erred is with respect to the stolen gun. The gun was a gun that was used to kill someone. That's true. That's true. And I think we need to have that context. That gun was used to kill somebody in April of 2011. The local police and the government, in this case, always believed that there were more individuals than the shooter involved in that shooting. Well, you've got the video of the shooting. I don't quite understand how that happened. But I read the transcript from the normal plea. It looks like there was an actual recording of the murder. There was a video. There was a video. My client was in, it was adjacent to a parking lot of a convenience store. Oh, it was a security camera video. Security camera video. My client was there. Now, he admitted to being there, admitted to seeing it. He gave a statement to the local police. The government, my contention as part of this prosecution, was to put pressure on my client to plead guilty and cooperate and identify the shooter, who he knew. He told the police who it was. He refused to do that because, first of all, he wasn't guilty as to count one, which a jury ultimately sided with him on. But more importantly, the government also, the local police and the government also believed that the owner of the gun was involved in that shooting. From day one, they believed that. They believed that that. Why is that good for him? Because, Your Honor, how can the gun be stolen if the owner of the gun gave it to the person who ultimately used it in a shooting? This person, this owner of this gun, never reported that gun stolen. He was approached in October of that year. I thought there was a report that the gun was stolen. Ten months later, over ten months later. But at the time your client was sentenced, there was a report that the gun was stolen. Absolutely, absolutely. Isn't that in and of itself enough? I think the court still has to assess the credibility of that report. Given the standard of review, though, and that's a really tall mountain for you to push a rock up, if the court relies upon a police document of a stolen gun, you're saying that that is clear error for the judge to do that? I don't think there is any reasonable interpretation on the facts of this case. I don't think anyone could reasonably conclude that that weapon was stolen. Someone did. When the government itself believed that this individual, the gun owner, was lying, that he was involved in that shooting, I don't think there's any reasonable interpretation. Is that on this record? None of that came out during the normal plea? I don't believe. We stipulate it to certain facts at the time of sentencing, which is what I'm basing that on.  He gets points because the gun was stolen, right? Yes. Are you saying that he shouldn't? I'm saying the government did not prove that the gun was stolen. Oh. The government did not prove. That statement given by that gun owner nearly a year after this happened, after he had already been approached by law enforcement, uttered for the first time, after which he ceased answering questions, refused to cooperate further, refused to take a polygraph examination because the government knew he was lying. It's almost you're holding his prior silence against him. I mean, that's contrary to everything. I think the government has taken multiple contrary positions in this case, that being one of them. Also with respect to the acceptance of responsibility when, as I noted in my brief, the government itself, I submit, believed my client would have been entitled to credit for acceptance of responsibility. They said if he pleads guilty to count one, then he'll be entitled to a full three-level credit for acceptance of responsibility. He had the gall to proceed the trial, get acquitted of count one. Now they say, well, he's not entitled to it. Well, we'll have to deal with what the government says about that, whether the government agrees with you. Thank you. Thank you. Thank you. May it please the Court, Jane Ditillo on behalf of the United States. I'll start with the acceptance of responsibility issue, and I'd especially like to focus on one of the district court's findings that was not discussed in appellant's part of the argument. The district court specifically found that the defendant dishonestly exaggerated his drug intake. I'm looking at the transcript. The judge says, further convincing to me is Mr. Harris's testimony to the court about the drugs and alcohol that he ingested. I find that is believable. Now, what are you relying upon? If you look at the appendix at page 207. It's more 206 to 207. The district court said that he had testified to taking an exorbitant quantity of drugs. He said that he had smoked 15 to 20 marijuana cigarettes, each laced with a dub of crack cocaine. He had taken six Xanax in that same four- to five-hour period. Yet she says, contrast that to the video I saw played. And that's at the bottom of the appendix at page 206. He was able to walk upright. He was able to maneuver his gun and put it in his belt. The district court did find that Mr. Harris did not remember what happened that night and therefore accepted his NOLO plea. But she also found that he exaggerated his drug intake. Well, she credited that he had Xanax. Maybe he had less Xanax than he said because I didn't look at the video. But apparently the video showed him not staggering around, not slurred speech, if it was found on there. But whatever she saw on that video, combined with the arresting officer's testimony, was sufficient to convince her to take the NOLO plea. She clearly did not want to take this NOLO plea. She wanted him to plead either guilty or not guilty. He had this long hearing which took from the beginning of the football game to the end of the football game and Sunday for me to read. So it may well have been more than two hours. And at the end of that she says, I find him credible. Now, I understand what you're saying that he may have exaggerated his intake, but the officer who was an experienced narcotics officer, and the judge even credited the fact that this officer used to work in narcotics, he knows what someone who is under the influence looks like, thought this guy was too whacked out or intoxicated or whatever to be questioned. So they didn't question him, they just took him in right away. And the officer said it wasn't making any sense. He kept mumbling something about his gun. This isn't his gun. His gun is in the car. Great defense, right? My gun is in the car. And so it seems to me where I'm having trouble is what do we do in a situation like this where someone can't remember, and it seems to me based upon what the judge found in terms of what he said that was credible, he just couldn't remember. So are you saying that in order to be entitled to a two-point reduction for acceptance of responsibility, the defendant basically has to perjure himself and say, oh, yeah, I remember all that. The assistant U.S. attorney just said that that's what they proved when they went to trial, and that's what happened, and I admit it. I'm joking. After they're under oath, the defendant was sworn in, he was under oath, you're saying what the court should do is say to the defendant, perjure yourself, you get an acceptance of responsibility, where part of 3553A is imposing a sentence that maintains respect for the law. So in order to maintain respect for the law, you hold on to a ruling that says, okay, perjure yourself. Is that what you're saying we should do? Absolutely not, Your Honor. I admit that it is more difficult for a defendant to show acceptance of responsibility when he pleads NOLO in a situation where he can't remember the conduct and can't testify to that conduct. However, it's not impossible and it's not barred. This court has required that a defendant seeking acceptance of responsibility please show genuine contrition. The defendant did not show that on this record. How can you be so genuine in contrition for something you don't remember doing? Well, he didn't remember doing it, but as my opposing counsel stated, he admitted that it was him on the video. He admitted that he did possess the gun, even though he couldn't say that he knowingly possessed the gun. So he did not express any contrition or remorse for those actions. He also said he didn't point at anybody. I mean, he knew that much. I don't know which side of the line that goes to, but he did talk about it. Now, maybe he did that based on the video. That may have been the basis for that statement. Whether or not he pointed it at anyone, and this goes to another issue that was raised, he absolutely was physically menacing people in the bar with that gun. They were certainly afraid they ran out. Yes. But I think for the acceptance of responsibility, he has to show acceptance of the responsibility for the possession of the gun, not also committing the felony of simple assault, which is more connected to that four-point enhancement. I think for the purposes of acceptance of responsibility, he had to show contrition for possessing the gun, which he admitted that he did possess that gun. Well, Mr. Yablosky said, I'm not sure if it's on the record. If it's not, maybe you can help us out by just conceding the point if it's accurate, that prior to this whole thing, Mr. Harris was offered a three-point reduction if he just pledged everything and went to trial. He refused to do that, entered not guilty as to count one, goes to trial on that, and then the government took the position that they were going to pose any acceptance of responsibility. Is that accurate, that he was offered a three-point reduction if he pled out? I believe that for the other count, which he eventually went to trial on, that the government made a statement to the effect that he would be entitled to that acceptance of responsibility. To a three-point? Yes, at that point when there were discussions before he went to trial because it was in advance. I'm assuming the government would have not passed count two. Count two would have gone away. I'm actually not aware of that specific conversation. But even if that conversation occurred, in the facts here, he did not meet his burden of demonstrating responsibility. But think of the situation that that puts the court in, in the sentence. We have a situation where if it's true, and maybe we can get a 28-J letter, if there's some memorialization of this, Mr. Jablonski, is it Dottillo, is that correct?  Dottillo, I'm sorry. Maybe you can send a 28-J letter. I'll look into that. If the situation is that before trial, the government tells the defendant, pleaded out to count one, will agree to a three-point reduction in responsibility. Defendant says, I'm not going to do that because I don't think I'm going to count one. Goes to trial on count one, jury acquits him on count one, he's left with count two, he pleads no to count two because he can't remember what happened with the bar. And the government comes back and says, well, look, you didn't plead out to count one, the thing you're not guilty of, according to the jury. So we oppose any exemptions of responsibility reduction unless you enter a guilty plea to count two, even though you don't remember the conduct, which is the basis of the charge to count two. That really creates kind of a cough gas situation, doesn't it? Well, I would make two points about that. First of all, the district court did find that after testimony at the plea allocution, that the defendant didn't remember what happened that night. That testimony wasn't in evidence when and if this offer existed. And the government did not concede, never conceded that the defendant did not remember or was unable to. That's worse for you because you're saying, Well, before a court finds as a matter of fact that he doesn't remember what happened, you make him a deal, try to make him a deal for a three-point reduction if he pleads to count one, not knowing what's going on with count two. I'm assuming count two is going to be an all-for-us, but that's an assumption they may not be willing to. We'll straighten that out. And I will definitely look into that. But my feeling is that it doesn't hurt us because the government believed and had an indictment charging him with knowingly possessing that gun. So at that point, the government did believe that he was guilty of that and that he was capable of pleading guilty. Eventually, the district court found otherwise. What about his statement in terms of constriction? Because I think that is, given our standard review here, that is an issue. The defendant said, Okay, Your Honor, in my prior convictions and pleas, I just wanted to say that if I was guilty of something, I pled guilty and accepted my fate like a man, I can't plead guilty to something that I don't have any recollection of. Even if Mr. Jablonski is right, it sounds like what happened here is almost a categorical policy that if you plead no law, you're not entitled to a two-point reduction. Maybe that's not what's going on, but that's different than the court saying, I understand you can't remember what happened, but I'm not, as I said before, I'm not getting from you any sense that there's any remorse here. You could have at least said, Well, look, if I did do what the government said, I'm really sorry I endangered people's lives. I could see that situation, in which case the court could just say, Well, I'm not getting from you a feeling of remorse, and therefore I'm not giving you the two points. That would be pretty valid, it seems to me. It's the charge as it's called. Or the court could have said, and maybe that's what happened here is, If you plead no law and I accept it, well, I'm going to accept it. I don't like it, but I'm going to accept it. But because you didn't plead guilty, you don't get any points for reduction. That latter point, it seems to me, as a policy matter, is very different from the former point. The former point, I think Mr. Jablonski clearly would lose. If it's the latter point, if that's what's going on here, I just don't know. Maybe that needs some clarification. So in the record, the judge said that, and I would have to look for the exact page, but she said that the NOLA plea does not categorically bar an acceptance of responsibility credit. Nor does a guilty plea automatically grant you acceptance of responsibility credit. Exactly, Your Honor. And I'm not aware of any policy that the government has that we do not give acceptance of responsibility adjustments categorically or do not oppose them categorically in a NOLA plea. But I do acknowledge that it is more difficult to prove acceptance of responsibility when you're not actually admitting to the offense conduct. Because when you enter a guilty plea, under the commentary to, I think it's Application Note 1-23E1.1, the commission has said that admitting guilt is strong evidence of acceptance of responsibility. They also say you can plead not guilty, go to trial, and you're still not. And that's what the court seems to be saying. She's saying, the section you referred to, I would note that in and of itself a NOLA plea does not categorically bar a reduction under the guideline Section 3E1.1. She's referring specifically to Commentary 1, the same thing I think you're alluding to, that it doesn't categorically deny that. That's not the same as whether or not the judge's policy is such to categorically deny it when someone pleads NOLA. From this record, I don't see that the judge simply relied on the entry of a NOLA plea to deny the acceptance of responsibility. She did say at Appendix Page 228 that the defendant never showed remorse. And then she immediately, that was in connection with discussing a possible departure, but then she immediately said, and I found that your conduct was not consistent with acceptance of responsibility. So she did link that lack of remorse to acceptance of responsibility in that way, if not explicitly. What does he have to do to show remorse? Well, there's no set formula, but if he had showed contrition by making an apology, of course he doesn't have to get down on his knees, but that would have gone a long way in getting him towards it. If he had gotten on his knees, it would have gone a long way. He might have gotten married. If the floors in the courtrooms in Pittsburgh were anything like the floors in the courtrooms I used to be in in Philadelphia, he would have been out of his mind to get down on his knees. Really dirty. There's carpet. It would certainly be dramatic. But that's not what he has to do, of course. But making an apology, an apology, again, is not a per se requirement for acceptance of responsibility. But in this case, where he didn't admit to the conduct, I think that would have gone a long way and gotten him closer to that acceptance of responsibility. At the sentencing hearing, didn't he blame his mental illness and didn't he also blame what he called, he said he should be equated to a veteran because his life was the equivalent of living in concrete Vietnam? Yes, and I think that that, and those are, I urge the court to review pages 230 through 231 of the appendix. 230 through 241? Yes, where the defendant, and it's after the court has already made her determination, but it shows that the court did not clearly err in finding that the defendant did not accept responsibility. He blames, the court itself asks about her political affiliation. He blames, again, his background. And while the court did consider his difficult background, he's clearly not accepting responsibility, I think, if you read those pages. And he, in fact, says... Can we really look at that in determining whether or not the district court clearly erred? I think that it's not what the district court based its decision on because that wasn't really in the record when the district court said that it doesn't apply. But I do think that you can look at that as evidence of what, it's rare that you see in the record such an explicit disclaimer of responsibility saying, I can't say I'm responsible. I think that probably reflects, I think you can infer that that reflects the defendant's demeanor and lack of contrition in the proceedings. And I'll say that the guideline, the commentary to the guideline itself and this court's cases, for example, in Batista, emphasize that the sentencing court is in a unique position to assess acceptance of responsibility. And that's because the defendant's demeanor and their subjective factors involved that are very important in that determination. But she accepted that. So then it's hard for you to say that she didn't. She did accept that he had accepted responsibility. I see that my time's up. No, by all means. Nice try, though. But I'm doing the same thing anyway. I don't think that she accepted that he accepted responsibility. Maybe I'm misunderstanding your question. Well, she said she believed him. That he was intoxicated and could not remember what had happened that night. As a matter of policy, should we allow intoxication to be a legitimate reason for not accepting responsibility? I mean, isn't there a more basic policy issue? Well, the Pennsylvania statute does do that. It says that voluntary intoxication can never negate intent. Yeah, but that only goes to culpability. That doesn't go to purposes of guilt. Of accepting responsibility. That doesn't get into the role that plays in sentencing and whether or not someone's mind is so obliterated that that's not something that would preclude a judge considering that for purposes of sentencing. You know, if the commission added a commentary note saying that voluntary intoxication could not negate intent for the purposes of accepting responsibility, I wouldn't think that was wrong. But I also agree with you that acceptance of responsibility is broader than just intent. And I could imagine some situation where someone did black out, as defendant said that he did, could not remember what happened and still through acts and words of sincere contrition could have accepted responsibility for the specific offense conduct and the conduct that led him to become so intoxicated that he committed that. I can imagine some scenario. But I agree with you that that should really be deterred because it's very liable to abuse. Thank you. Thank you. Let's see if I can live up to that challenge, Judge. You'll be able to. I've got a question for you in two minutes. I'm looking at this section of the transcript that was alluded to earlier where he talks about being a veteran and it's kind of ironic. I've never seen a situation like this before where what he says during allocution in an attempt to explain to the judge why he should be cut, I wouldn't say a break, but... It is a break. Yeah. Giving the judge a more realistic picture from the defendant's view about what's appropriate becomes absence of remorse. But the standard of review, I mean, that's the judge's call, isn't it? Well, those statements were made after the judge's findings, after she gave her reasonings for refusing to accept the responsibility. Okay, so this is... When you talk about the friends being killed in Vietnam, this is after the judge's ruling? I believe she pronounced sentence at that point in time. Wasn't that before? I believe she pronounced sentence, committed to the rest of their prisons. I thought that was before when I raised it. I think it was after, Judge. Can you also, in the 28-J letter, if you could pinpoint us to the point, because that's important. Will do. But what he's saying here, and this gets back to the homicide. He's talked about the Vietnam experience. His first wife died shortly after he gets out of prison. He says, I'm watching a lot of my friends were killed and shot with gun violence. Like I said, these things affected my psyche, so I feel like it was more than depression I suffer from. And I made countless attempts to get pre-trial rehabilitation, so I feel like I'm eligible for a departure or a variance because of these issues. He made some of those... I'm sorry. And, you know, I'm hoping and I'm praying that coming to the court will help me out. But the only means to help that I seem to be able to get is if I would have cooperated in a homicide. He's basically saying if I had flipped, then I would have gotten... If I would have done what the government was trying to force me to do, which I couldn't do, as you found, Judge, District Court Judge, then maybe I would get the consideration. That's not fair. I don't think he should have to do that. He's not saying that, but he's saying had he cooperated in a homicide. He's not saying had I admitted and pled guilty. Well, that would be part and parcel. That's what this prosecution was in large part about was to force him to cooperate in there and plead to something that he was not guilty of. Isn't that what the government always does? Sure. I did it myself when I was a prosecutor. But, you know, he couldn't. He couldn't. And the District Court believed him. I just want to point out just two couple of points. At the change of plea hearing, the government agreed that the defendant was highly intoxicated. The government agreed that the defendant didn't remember these facts. Page 137 of the appendix, the government agreed that an inappropriate time to take a no-law plea was when a defendant didn't want to plead guilty, said this does not appear to be the case here. The government then changed that position after the acquittal. The government suggested in its position with respect to sentencing after the first pre-sentence report that the defendant may very well be entitled to the three points for acceptance responsibility. That's at page 174. The government then changed that after the acquittal. Those comments about the concrete Vietnam, et cetera, those were the comments that were uttered, I believe, Judge, respectfully, after the court pronounced sentence. The comments that Judge McKee made about the mental health issues in the past or whatever, I believe were before, yes. And also during the time he made those comments, he did say, I'm accepting responsibility. He did utter those words at the time of making those comments. We don't have time for the 2K2.1 issue. Well, can we consider what he said afterwards? No. Those comments were made by a mentally infirm person after the judge had already made her findings with regard to the acceptance responsibility. But why can't we consider them? They're not what the court's ruling, what the court's findings were based upon. It's a short answer to that. That's not directed at you. That I did something wrong here. I haven't been here for a while. Just briefly with respect to the 2K2.1 enhancement, the findings made by the court at the time of sentencing were not the same findings that she made while she was reviewing the video. She didn't say that people were running for their lives, scared for their lives. She didn't say he was menacing. She said it appeared to be some people were scooting. What does scooting mean? Doesn't it mean running out? It doesn't mean fearing for their lives, in my opinion, Judge. He never pointed a gun at anybody, he never was seen threatening anybody with a gun. He had a gun, which he admitted to. But you go to a bar and you have a gun in your hand, and you're using it. I mean, I don't understand. But it's his conduct. What did he do? Yeah, but what did he do? But he had the gun. We saw in the video, he walked back and forth with a gun in a bar. Where did the gun come from? There was a metal detector there and people were patted down. How come? And he says he didn't, which is also kind of a problem because he said he didn't go there with a gun. He remembered that. That's true, and she found that to be credible. She found that to be credible. And the government also did not offer the witnesses to the audio recordings. That's really what she based that finding on, that enhancement, was those audio recordings. I repeatedly requested. Which audio recordings? Government-played audio recordings. The 9-11 calls. At the time of the sentencing. Well, that's admissible in sentencing, is it not? It is, but I think it says something when the government repeatedly says these are known individuals who we've talked to, I've asked them to produce them, even identify them, and they don't do that. And that's the finding. That's really what she based that enhancement on. As you know, it's not easy to get people to come in and testify. At least they had the audio recording. I understand that. Thank you. Thank you, Mr. Lester.